| YELVERTON, J.
This matter involves the termination of parental rights. The State of Louisiana filed a petition for termination of parental rights and certification for adoption against J.G., the mother of M.J.G., T.M.G., and J.P.G., as well as against M.L., the father of T.M.G., and J.P.G. The father of M.J.G. voluntarily surrendered his parental rights to his child and is no longer involved in this litigation. The trial court granted judgment in favor of the State. For the following reasons, we affirm.
On December 11, 1998, the Louisiana Department of Social Services (DSS) received information concerning the potential abuse of one of the children. Upon investigation, it was found that the mother had often whipped the oldest child on the legs, resulting in numerous bruises. Based on neglect, the children were placed in the custody of the State. On February 22, 1999, the children were adjudicated children in need of care.
On October 27, 2000, the DSS filed a petition for termination of parental rights against the mother based upon the fact that the children had been in the custody of the State for more than one year and the mother had not substantially complied with her case plan. The State also filed for termination of the father’s parental rights based upon his incarceration for multiple burglary convictions. The trial court ruled in favor of the DSS, terminating both the mother’s and the father’s parental rights. From this decision, both appeal.
Louisiana Children’s Code Article 1015 establishes the grounds for involuntary termination of parental rights. The State is required to prove grounds for termination under only one subsection of the statute. La.Ch.Code art. 1015; State ex rel. J.A., 99-2905 (La.1/12/00); 752 So.2d 806. However, the State must prove the elements | ¡>.of one of the enumerated grounds by clear and convincing evidence to sever the parental bond. La.Ch.Code art. 1035(A); State ex rel. J.A., 752 So.2d 806.
The State sought termination of the mother’s rights under Louisiana Children’s Code Article 1015(5). This Article provides:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance .with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of. the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
Thus, the DSS must prove by clear and convincing evidence that the children have been in the custody of the State for over a year, that the mother has not substantially complied with the case plan filed by the DSS and approved by the court, and that there is no reasonable expectation of improvement in the mother’s condition or conduct in the near future.
*957 That the children were in the custody of the State for more than one year is not in dispute, so this requirement has been met. As for the second condition of Article 1015(5), the trial court found that the mother’s home was kept in an unsafe condition for the children to live in. It specifically noted broken windows, rotting floors, the unsanitary nature of the home, and sheets acting as doors, located so close to space heaters as to pose a fire hazard. While some of these problems were fixed prior to trial, the court noted that they had existed for an extended period of time, but had not been taken care of until the day before the hearing. The maintenance of a safe and stable home was an integral part of the case plan established by the DSS. The trial | ¡¡court found that the mother did not meet this condition. This finding is not manifestly erroneous.
The final requirement of the statute which must be shown by the DSS is that there is no reasonable expectation of improvement in the mother’s conduct or condition in the near future. Two of the children have behavioral and developmental problems. The mother had been diagnosed with depression, a borderline personality disorder, and intelligence problems that could provide difficulty in raising children with special needs. The trial court found that the mother, based on a lack of understanding of her situation, did not have the insight to properly meet the added needs of these children. One indication of this was the manner in which the mother fixed the problems in her home the day before trial, as discussed above. The trial court found this to indicate that, while she did want her children back, she did not have a working comprehension of what the children needed on a day-to-day basis. The trial court found that due to her mental deficiencies, the mother would be incapable of providing for the special needs of these children. Based on the evidence presented at trial, this ruling is not manifestly erroneous, and will not be disturbed.
The trial court ruled that the DSS proved all the requirements of Article 1015(5) by clear and convincing evidence, giving grounds to terminate the parental rights of the mother. Nothing in the record indicates that this ruling is clearly wrong. Therefore, that decision of the trial court is affirmed.
In addition to finding that the State has proven grounds for termination by clear and convincing evidence, “the judge must also find that the termination is in the best interest of the child. La. Child. Code art. 1039.” State ex rel. J.A., 752 So.2d 806, 811. The trial court in this matter found that the termination of the mother’s parental |4rights was in the best interests of these children. Again, there is nothing in the record to suggest that the trial court erred in making this determination. Therefore, this finding is also affirmed.
The father also appeals the termination of his parental rights. The DSS sought termination of his rights under Louisiana Children’s Code Article 1015(6), which states:
The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child’s age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care.
At the time the children were placed into the custody of the State, the father was in prison serving a 12-year *958 sentence for burglary. By committing his crimes, the father has placed himself in a position where he cannot care for his children. The trial court considered the children’s age and their need for a safe, stable, and permanent home, and found that the father was unable to provide for their needs. The father claims, however, that the DSS failed to prove that he refused or faded to provide a reasonable plan for his chddren’s care. This claim is based on testimony that his aunt, his own foster mother, would provide a home for the chd-dren. However, the record shows that the aunt had custody of the chddren at one time but returned them to the State. Ad-ditionady, the aunt stated that she would not accept the chddren as long as they were in DSS custody and had the same social worker that had previously handled their case.
|fiThe trial court found that placing the chddren in the care of the aunt, who had already returned the chddren to the DSS once, was not a reasonable plan for the chddren’s care. Accordingly, the court ruled that the DSS had proven the elements of Article 1015(6) by clear and convincing evidence. Again, there is nothing in the record to indicate error in this finding. Finally, the trial court did not commit manifest error in finding that the termination was in the best interests of these children in accordance with Louisiana Children’s Code Article 1089, as discussed above.
For the reasons assigned, the ruling of the trial court, terminating the parental rights of both the mother and the father of the chddren involved in this matter, is affirmed. Costs of this appeal are assessed to the parents.
AFFIRMED.